UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16cv003-FDW

| | |
|---|---|
| MONTAVIUS ANTOINE JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| DAVID MITCHELL, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court upon Petitioner Montavius Antoine Johnson's pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court is Respondent's Motion for Summary Judgment. (Doc. No. 7.)

**I.   BACKGROUND**

Petitioner is a prisoner of the State of North Carolina, who was convicted on February 8, 2002, after a trial by jury in Mecklenburg County Superior Court, of first-degree murder under the felony murder rule and armed robbery and was sentenced to life imprisonment without parole. The State's evidence tended to show that:

> on 2 July 1999 at approximately 2:30 a.m., Kimberly Pegues met her boyfriend Antonio Baker at a friend's apartment. When Pegues arrived, she noticed that Baker had a 10-millimeter Glock handgun in his pocket. Shortly thereafter, the couple left the apartment and Baker put the gun in his car. The couple then drove their separate cars to a fast food restaurant where Pegues got out of her vehicle to use the phone; Baker remained in his car. Upon returning to her car and backing out of the parking space, Pegues saw Defendant and another person approach Baker's car (later identified as C.J. Toney). Pegues heard someone yell "Give me your shit" and then "I don't have anything, man." Pegues saw defendant rummaging through Baker's car, and observed him throw belongings from Baker's glove box and back seat into the street. Pegues heard a shot and saw Defendant run back to his vehicle. Shortly thereafter, defendant returned to Baker's car and Pegues heard another shot. Baker died from a gunshot wound to the head.

1

> A police investigation uncovered a 10-millimeter shell in Defendant's yard, with markings consistent with having been fired from a 10-millimeter Glock.

State v. Johnson, 588 S.E.2d 488, 489 (N.C. Ct. App. 2003).

Petitioner appealed, and on December 2, 2003, the North Carolina Court of Appeals filed an opinion finding no error. Id. at 492. He did not seek discretionary review in the North Carolina Supreme Court.

On December 5, 2013, Petitioner filed a pro se motion for preservation of evidence and post-conviction DNA testing in Mecklenburg County Superior Court. (Resp't's Ex. 4, Doc. No. 8-5.) It was denied on January 14, 2014. (Resp't's Ex. 6, Doc. No. 8-7.) On or about January 30, 2014, Petitioner filed a pro se "Notice and Petition for Discharge From Imprisonment and Notice for Provisional Release" (Resp't's Ex. 7, Doc. No. 8-8), which the Mecklenburg County Superior Court construed as a motion for appropriate relief ("MAR") and summarily denied on March 4, 2015 (Resp't's Ex. 8, Doc. No. 8-9). On March 25, 2016, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals (Resp't's Ex. 10, Doc. No. 8-11), which was denied on April 16, 2015 (Resp't's Ex. 12, Doc. No. 8-13).

Petitioner filed the instant federal habeas Petition on December 29, 2015, when he signed and placed it in the prison mailing system. (Pet. 15, Doc. No. 1.)[1] He raises three grounds[2] for relief: (1) the State suppressed exculpatory evidence that would have shown he was actually innocent of Baker's murder; (2) trial counsel rendered ineffective assistance by failing to follow

---

[1] Unless otherwise noted, citations to the habeas Petition use the page numbers generated by CM/ECF, the district court's electronic filing system.
[2] Petitioner actually raises four grounds for relief, but Grounds One and Two are slightly different iterations of the same claim.

2

through on a promise to present an affirmative defense at trial; and (3) trial counsel was unable to render effective assistance due to the State's suppression of material, exculpatory evidence. Upon order of the Court, Respondent filed an Answer, Motion for Summary Judgment, and Memorandum in Support of the Motion for Summary Judgment. (Doc. Nos. 6-8.) The Court, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), provided Petitioner notice and an opportunity to respond to the Motion for Summary Judgment. (Doc. No. 9.) Subsequently, Petitioner filed a response in which he raises new claims, which this Court will not review, and presents arguments that were not made previously in his habeas Petition. (Doc. No. 10.)

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B. The Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a statute of limitations for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The petition must be filed within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The one-year period of limitation applies to the entire § 2254 petition, on a claim-by-claim basis. See Pace v. Diguglielmo, 544 U.S. 408, 416 n.6 (2005).

## III.    DISCUSSION

### A. Brady Claim

Petitioner's convictions became final on January 6, 2004. The North Carolina Court of Appeals issued its opinion affirming Petitioner's convictions and sentence on December 2, 2003. Petitioner then had thirty-five days to file a petition for discretionary review in the North Carolina Supreme Court. See N.C. R. App. P. 15(b) ("A petition for review following determination by the Court of Appeals shall be . . . filed and served within fifteen days after the mandate of the Court of Appeals has been issued to the trial tribunal."); N.C. R. App. P. 32(b) ("Unless a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court twenty days after the written opinion of the court has been filed with the clerk."). Petitioner did not seek discretionary review during that thirty-five-day time frame. Therefore, his conviction became final on January 6, 2004, when the time for seeking review expired. See § 2244(d)(1)(A); Gonzalez v. Thaler, 132 S.Ct. 641, 656 (2012) ("We hold that, for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that

the time for seeking such review expires.").

The federal statute of limitations then proceeded to run for 365 days until it fully expired on January 6, 2005. Petitioner's post-conviction filings in the Mecklenburg County Superior Court did not serve to restart the federal statute of limitations. A properly filed MAR will toll the federal statute of limitations, see § 2244(d)(2), if the MAR is filed before the statute of limitations has expired, see Minter v. Beck, 230 F.3d 663, 665–66 (4th Cir. 2000). Here, the statute of limitations under § 2244(d)(1)(A) expired almost nine years before Petitioner filed his first post-conviction motion.

Petitioner contends, however, that the one-year statute of limitations does not bar his claim that the State suppressed material, exculpatory evidence that would have shown he was actually innocent of Baker's murder. (Pet'r's Resp. to Summ. J. Mot. 10, Doc. No. 10.) In McQuiggin v. Perkins, the Supreme Court recognized a "miscarriage of justice" exception to § 2244(d)(1)(D). 133 S.Ct. 1924, 1928 (2013). Under that exception, a credible showing of actual innocence may allow a petitioner to pursue his constitutional claims on the merits notwithstanding expiration of the statute of limitations. Id. at 1931. The miscarriage of justice exception, however, applies only to cases "in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" Id. at 1933 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)) (internal quotation marks omitted). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

According to Petitioner, it was C.J. Toney who killed Baker. Petitioner asserts that he

was between Baker and Toney when Toney shot him (Petitioner) in the back left shoulder and that the bullet passed through his body, entered Baker's back left shoulder, and stopped in Baker's chest. Petitioner claims the State suppressed evidence that the bullet that killed Baker had Petitioner's DNA on it. (Pet., supra, 18 ¶3.)[3]

In Brady v. Maryland, the Supreme Court held that a due process violation occurs when the prosecution suppresses evidence favorable to an accused that is material either to guilt or to punishment, regardless of whether the prosecution acted in good faith. 373 U.S. 83, 87 (1963). For the State to have suppressed evidence that the bullet that killed Baker had Petitioner's DNA on it, the State first would have had to run a DNA test on the biological material from that bullet. Petitioner, however, provides absolutely no evidence that the State ran such a test on either bullet recovered from Baker's body. The State cannot violate Brady by suppressing non-existent evidence.

Moreover, Petitioner cannot demonstrate that his DNA was on the bullet that killed Baker. Indeed, it is difficult see how his DNA could have been on that bullet, as Baker died from a gunshot wound to the head, not the shoulder. Nevertheless, Petitioner cannot show that his DNA was on the bullet pulled from Baker's chest, either. Petitioner's 2013 motion for DNA testing of the two bullets was denied, in part, because the likelihood of obtaining the necessary biological material from the bullets to run a DNA test was virtually non-existent. (Order Den. DNA Testing, Resp't's Ex. 6, Doc. No. 8-7 ("[F]or the reasons presented in the State's Response, the defendant is not entitled to DNA testing.").) According to the State's Response to

---

[3] When Petitioner was arrested five days after Baker's murder, investigators observed that Petitioner had bullet exit and entry wounds to his left shoulder. (Pet'r's Exs. B & C, Pet. 32-41, Doc. No. 1.) Trial counsel was in possession of this evidence. (Pet'r's Resp. to Mot. For Summ. J. 3 ¶3, Doc. No. 10.)

Petitioner's motion for DNA testing,

> the Medical Examiners clean any bullets they remove from a victim's body prior to turning the bullets over to a homicide detective. The firearms section of the Charlotte-Mecklenburg Crime Laboratory also handled and examined the bullets in this case. The firearms section of the Crime Laboratory uses a solution of bleach and water to clean the bullets before conducting their examinations. Thus, the likelihood of those bullets still containing "biological evidence" is nil.

(Resp't's Ex. 5 ¶14, Doc. No. 8-6.) The autopsy report, a copy of which Petitioner acknowledges receiving as part of discovery in this case, shows that neither bullet exited Baker's body; they were removed by the medical examiner. (Pet'r's Ex. A, Pet., supra, at 26-27.) Even if the medical examiner did not follow the usual practice of cleaning the bullets before turning them over to the homicide detectives in this case, the firearms section of the Crime Lab would have cleaned them before examining them.

Thus, Petitioner cannot show that he and Baker were shot with the same gun, much less the same bullet. Even if he could show that they were shot with the same gun, he cannot show that they were shot at the same time. See e.g., Johnson, 588 S.E.2d at 489 (noting investigators uncovered a 10-millimeter shell in Petitioner's yard, with markings consistent with having been fired from a 10-millimeter Glock).

Finally, even if Petitioner had been able to demonstrate at trial that his DNA was on the bullet removed from Baker's chest, he has not demonstrated that "it is more likely than not that no reasonable juror would have convicted" him of first-degree felony murder. See McQuiggin, 133 S.Ct. at 1933 (citation and internal quotation marks omitted). Simply put, when taken together with all of the other evidence presented at trial, DNA evidence showing Petitioner did not shoot Baker in the back, does not make it more likely than not that the jury would have concluded Petitioner likewise did not shoot Baker in the head.

Having failed to identify new reliable evidence that credibly shows his actual innocence, Petitioner may not rely upon the "miscarriage of justice" exception to § 2244(d)(1)(D) to obtain a merits review of his Brady claim. See id. at 1931. Therefore, with respect to this claim, the statute of limitations expired on January 6, 2005, pursuant to § 2244(d)(1)(A). It will be dismissed as untimely.

**B. Ineffective Assistance of Trial Counsel**

Petitioner claims he was denied effective assistance of counsel at trial when his defense attorney forecast an affirmative defense during his opening statement at trial but then failed to present evidence to support that defense. (Pet., supra, at 17-18, 21.) Petitioner raised this claim on direct appeal. See Johnson, 588 S.E.2d at 490 ("Defendant first argues that his counsel's failure to bring forth the affirmative defense that he forecast in his opening statement constituted ineffective assistance of counsel.") The North Carolina Court of Appeals adjudicated this claim on the merits. See id.

Petitioner does not contend that the statute of limitations for this claim is governed by §§ 2244(d)(1)(B), (C), or (D). In the absence of any evidence Petitioner was prevented by unlawful State action from raising this claim in a timely federal habeas petition, the Court finds that it is untimely under § 2244(d)(1)(A).

Petitioner also claims he was denied effective assistance of counsel because the State suppressed evidence that his DNA was on the bullet that killed Baker, thereby preventing counsel from presenting the promised affirmative defense that Petitioner was between Toney and Baker when Baker was shot in the shoulder. For the reasons stated in the Court's analysis of the timeliness of Petitioner's Brady claim, see discussion, supra, at Section III A, 5-8, this

ineffective assistance of counsel claim likewise is untimely under § 2244(d)(1)(A).[4]

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus (Doc. No 1) is **DISMISSED** as untimely;

2) Respondent's Motion for Summary Judgment (Doc. No. 7) is **GRANTED**; and

3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: August 22, 2016

Frank D. Whitney
Chief United States District Judge

---

[4] Petitioner does not contend that he is entitled to equitable tolling of any of his claims. See e.g,. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (Equitable tolling requires a showing "(1) that [the petitioner] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of filing a timely habeas petition.)