**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:16cv003-FDW**

| | | |
|---|---|---|
| MONTAVIUS ANTOINE JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| DAVID MITCHELL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court upon remand from the Fourth Circuit Court of

Appeals of Petitioner Montavius Antoine Johnson's pro se Petition for Writ of Habeas Corpus

filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On August 24, 2016, this Court entered an

Order granting Respondent's Motion for Summary Judgment and dismissing Petitioner's § 2254

habeas Petition as untimely under 28 U.S.C. § 2244(d)(1)(A). (Doc. No. 11).) Petitioner

appealed, and on April 14, 2017, the Fourth Circuit Court of Appeals concluded that this Court

had "failed to consider [Petitioner's] claims that his petition was timely pursuant to 28 U.S.C. §

2244(d)(1)(C), (D) (2012)." (Doc. No. 16.) It, therefore, dismissed the appeal and remanded to

this Court for consideration of those "claims."

**I.      BACKGROUND**

Petitioner is a prisoner of the State of North Carolina, who was convicted on February 8,

2002, after a trial by jury in Mecklenburg County Superior Court, of first-degree murder under

the felony murder rule and armed robbery and was sentenced to life imprisonment without

parole. The State's evidence tended to show that:

> On 2 July 1999 at approximately 2:30 a.m., Kimberly Pegues met her boyfriend
> Antonio Baker at a friend's apartment. When Pegues arrived, she noticed that Baker

1

had a 10-millimeter Glock handgun in his pocket. Shortly thereafter, the couple left the apartment and Baker put the gun in his car. The couple then drove their separate cars to a fast food restaurant where Pegues got out of her vehicle to use the phone; Baker remained in his car. Upon returning to her car and backing out of the parking space, Pegues saw Defendant and another person approach Baker's car (later identified as C.J. Toney). Pegues heard someone yell "Give me your shit" and then "I don't have anything, man." Pegues saw defendant rummaging through Baker's car, and observed him throw belongings from Baker's glove box and back seat into the street. Pegues heard a shot and saw Defendant run back to his vehicle. Shortly thereafter, defendant returned to Baker's car and Pegues heard another shot. Baker died from a gunshot wound to the head.

A police investigation uncovered a 10-millimeter shell in Defendant's yard, with markings consistent with having been fired from a 10-millimeter Glock.

At trial, Defendant's counsel made the following statements during his opening statement:

C. J. Toney is the individual who shot both shots that night. That is our contention. And, he is the individual who shot and killed Baker.

Now, what happens in between there is a question of whether Mr. Johnson was trying to prevent that or not. Now remember, whatever Ms. Pegues tells you, we're asking you to pay close attention to it and look at; because, the positioning of the people is very important; where they were; and, what they may or may not have been doing.

Because, there may have been other reasons why Mr. Johnson was in between Mr. Toney and Mr. Baker. And, we will ask you to consider those reasons, at the appropriate time.

So, listen carefully to this eyewitness testimony and weigh what could have been seen and what could not be seen.

State v. Johnson, 588 S.E.2d 488, 489-90 (N.C. Ct. App. 2003).

On direct appeal, Petitioner claimed trial counsel was ineffective for promising in his opening statement to present an affirmative defense and then failing to do so. Id. On December 2, 2003, the North Carolina Court of Appeals filed an opinion affirming judgment. Id. at 492. Petitioner did not seek discretionary review in the North Carolina Supreme Court.

On December 5, 2013, Petitioner filed a pro se motion for preservation of evidence and

post-conviction DNA testing in Mecklenburg County Superior Court. (Resp't's Ex. 4, Doc. No. 8-5.) It was denied on January 14, 2014. (Resp't's Ex. 6, Doc. No. 8-7.) On or about January 30, 2014, Petitioner filed a pro se "Notice and Petition for Discharge From Imprisonment and Notice for Provisional Release" (Resp't's Ex. 7, Doc. No. 8-8), which the Mecklenburg County Superior Court construed as a motion for appropriate relief ("MAR") and summarily denied on March 4, 2015 (Resp't's Ex. 8, Doc. No. 8-9). On March 25, 2016, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals (Resp't's Ex. 10, Doc. No. 8-11), which was denied on April 16, 2015 (Resp't's Ex. 12, Doc. No. 8-13).

Petitioner filed the instant federal habeas Petition on December 29, 2015, when he signed and placed it in the prison mailing system. (Pet. 15, Doc. No. 1.) [1] He raises four grounds for relief: (1) newly discovered evidence demonstrates that he is actually innocent of Baker's murder; (2) the State suppressed exculpatory evidence that would have shown Petitioner is actually innocent of Baker's murder; (3) trial counsel rendered ineffective assistance by failing to follow through on a promise to present an affirmative defense at trial; and (4) trial counsel was unable to render effective assistance due to the State's suppression of material, exculpatory evidence. Upon order of the Court, Respondent filed an Answer and Motion for Summary Judgment. (Doc. Nos. 6, 7.) In addition to addressing their merits, Respondent raised a statute of limitations defense with respect to all the claims raised. (Answer ¶ 1, Doc. No. 6.)

In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court provided Petitioner notice and an opportunity to respond to the Motion for Summary Judgment. (Doc. No. 9.) Subsequently, Petitioner filed a 45-page response in which he raised new claims

---

[1] Unless otherwise noted, citations to the habeas Petition use the page numbers generated by CM/ECF, the district court's electronic filing system.

and alleged facts that were not in his habeas Petition.  (Doc. No. 10.)

On August 24, 2016, this Court entered an Order granting Respondent's Motion for Summary Judgment and dismissing Petitioner's § 2254 habeas Petition as untimely under 28 U.S.C. § 2244(d)(1)(A).  (Doc. No. 11).)  In its Order, the Court found Petitioner had failed to demonstrate that the State suppressed material exculpatory evidence.  The Court also found that there was no merit to Petitioner's assertion that newly discovered evidence demonstrated he was actually innocent of Baker's murder.  (Order Dismiss'g Pet. 5-8, Doc. No. 11) (citing 28 U.S.C. § 2244(d)(1)(D); McQuiggin v. Perkins, 133 S.Ct. 1924, 1928 (2013).)  Finally, the Court noted that "Petitioner does not contend that he is entitled to equitable tolling of any of his claims." (Order Dismiss'g Pet. 9 n.4.)

Petitioner appealed, and on April 14, 2017, the Fourth Circuit Court of Appeals concluded that this Court had "failed to consider [Petitioner's] claims that his petition was timely pursuant to 28 U.S.C. § 2244(d)(1)(C), (D) (2012)."  (Doc. No. 16.)  It, therefore, dismissed the appeal and remanded to this Court for consideration of those "claims."

## II.     STANDARD OF REVIEW

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).  Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).  Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

## III.    DISCUSSION

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a

statute of limitations for § 2254 petitions by a person in custody pursuant to a state court

judgment.  28 U.S.C. § 2244(d)(1).  The petition must be filed within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The one-year period of limitation applies to the entire § 2254 petition,

on a claim-by-claim basis.  See Pace v. Diguglielmo, 544 U.S. 408, 416 n.6 (2005).

Judgment was entered in Petitioner's case on February 8, 2002 when he was sentenced.

The North Carolina Court of Appeals issued its opinion affirming Petitioner's convictions and

sentence on December 2, 2003.  Petitioner then had thirty-five days to file a petition for

discretionary review in the North Carolina Supreme Court.  See N.C. R. App. P. 15(b) ("A

petition for review following determination by the Court of Appeals shall be . . . filed and served

within fifteen days after the mandate of the Court of Appeals has been issued to the trial

tribunal."); N.C. R. App. P. 32(b) ("Unless a court orders otherwise, its clerk shall enter

judgment and issue the mandate of the court twenty days after the written opinion of the court

has been filed with the clerk.").  Petitioner did not seek discretionary review during that thirty-

five-day time frame. Therefore, his conviction became final on or about January 6, 2004, when the time for seeking review expired. See § 2244(d)(1)(A); Gonzalez v. Thaler, 132 S.Ct. 641, 656 (2012) ("We hold that, for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires.").

The federal statute of limitations then proceeded to run for 365 days until it fully expired on or about January 6, 2005. A properly filed MAR will toll the federal statute of limitations, see § 2244(d)(2), if the MAR is filed before the statute of limitations has expired, see Minter v. Beck, 230 F.3d 663, 665–66 (4th Cir. 2000). Here, the statute of limitations under § 2244(d)(1)(A) expired almost nine years before Petitioner filed his first post-conviction motion.

## B. 28 U.S.C. § 2244(d(1)(D)

The Fourth Circuit has remanded for this Court to consider Petitioner's "claim" that his Petition is timely pursuant to 28 U.S.C. § 2244(d)(1)(D). Under § 2244(d)(1)(D), the federal statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

In his first ground for relief, Petitioner claims that newly discovered DNA evidence demonstrates he is actually innocent of Baker's murder. (Pet. 5, 16-20.) In his second ground for relief, Petitioner claims the State violated his right to due process by suppressing evidence that his DNA was on one of the bullets removed from Baker's body. (Pet. 7, 16-21.) As part of his third ground for relief, Petitioner claims trial counsel was unable to render effective assistance due to the State's suppression of the DNA evidence.[2] (Pet. 21-22.)

---

[2] As noted previously, the one-year period of limitation applies to the entire § 2254 petition, on a claim-by-claim basis. See Pace, 544 U.S. at 416 n.6. Petitioner's claim that trial counsel was ineffective for failing to follow through on a promised affirmative defense (Pet. 21-22) is not implicated here. It was raised in the state courts on direct appeal. Therefore, the factual predicate for that claim existed prior to Petitioner's judgment of conviction becoming final.

These claims rely on the same allegations of fact: (1) that C. J. Toney killed Baker; (2) that Petitioner was between Baker and Toney, attempting to prevent an altercation between the two, when Toney shot him (Petitioner) in the back left shoulder (Pet. 18); (3) that investigators observed bullet exit and entry wounds in Petitioner's left shoulder when they arrested him five days after Baker's murder (Pet. 32, Pet'r's Ex. B); (4) that medical records demonstrate Petitioner was treated at Carolinas Medical Center, on July 8, 1999 for a gunshot wound to his left shoulder (Pet. 34-41, Pet'r's Ex. C); (5) that about four months after his arrest, Petitioner reviewed Baker's autopsy report and discovered Baker had suffered a gunshot wound to his left shoulder the night he was killed (Pet'r's Resp. to Summ. J. Mot. 4 ¶ 3, Doc. No. 10); and (6) that Petitioner notified his attorneys of his belief that when Toney shot him from behind, the bullet exited the front of his left shoulder and entered Baker's upper back left shoulder (Pet'r's Resp. to Summ. J. Mot. 4-5 ¶ 3). (Pet. 16-21.) Based on this set of facts, Petitioner contends his DNA was on the bullet that entered Baker's shoulder, which, he argues, demonstrates he is innocent of Baker's murder. He claims that the State failed to disclose that his DNA was on that bullet.[3] (Pet. 18, ¶¶ 3, 4.)

In Brady v. Maryland, the Supreme Court held that a due process violation occurs when the prosecution fails to disclose evidence to the defense that is favorable to the accused and is material either to guilt or to punishment, regardless of whether the prosecution acted in good faith. 373 U.S. 83, 87 (1963). For the purpose of determining whether statutory tolling under § 2244(d)(1)(D) applies, the Court must determine when Petitioner, through the exercise of due

---

[3] Petitioner's actual claim is that the State suppressed evidence that his DNA was on the bullet that *killed* Baker. (Pet. 18 ¶ 3). As the Court noted in its original Order dismissing the habeas Petition as untimely, Baker died from a gunshot wound to the head, not the shoulder. (Order Dismiss'g Pet. 6, Doc. No. 11.) The bullet that entered Baker's shoulder lodged in his chest and was removed during his autopsy. (Autopsy Rpt., Pet. 27, Doc. No. 1.) Therefore, the Court addressed whether Petitioner had presented evidence that his DNA was on either bullet removed from Baker's body. (Order Dismiss'g Pet. 6-7.)

diligence, could have discovered the State suppressed evidence that his DNA was on the bullet removed from Baker's chest/shoulder.

Petitioner is of no help in this regard. With respect to the claims raised in his Petition, the following constitutes the entirety of Petitioner's argument that his Petition is timely under § 2244(d)(1)(D): "The Petitioner discovered newly undisclosed evidence and the tolling should begin from April 16, 2015. See 28 U.S.C. 2244(D)(1)(D)[sic][.]" (Pet. 13.)[4] April 16, 2015, is the date the North Carolina Court of Appeals denied Petitioner's petition for writ of certiorari. (Resp't's Ex. 12, Doc. No. 8-13). Nothing in the Petition hints at when Petitioner purportedly discovered the State had failed to disclose that his DNA was on one of the bullets. Nor does he provide that information in his Response to the State's Motion for Summary Judgment. (Doc. No. 10.) In fact, Petitioner does not assert that his Petition is timely under § 2244(d)(1)(D) anywhere in his Response.

In the face of Petitioner's complete failure to identify when he discovered the factual predicate for his Brady claim, this Court, in its original Order dismissing the habeas Petition as untimely, presumed Petitioner was not entitled to statutory tolling under § 2244(d)(1)(D), but did not end its analysis there. (Order Dismiss'g Pet. 5-7.) Because Petitioner's claim that newly discovered evidence demonstrates he is actually innocent of murder depends upon the validity of his Brady claim, the Court did not treat the first ground for relief as a constitutional claim, "but instead [as] a gateway through which [Petitioner] must pass to have his otherwise [time-]barred [Brady] claim considered on the merits," Schlup v. Delo, 513 U.S. 298, 315 (1995) (citation omitted). (Order Dismiss'g Pet. 5-8 (citing § 2244(d)(1)(D); McQuiggin v. Perkins, 133 S. Ct.

---

[4] Petitioner raised additional claims in his Response to the State's Motion for Summary Judgment, which this Court did not address because: 1) Petitioner did not file a motion to amend his Petition to add any new claims; 2) the Petition itself was untimely; and 3) the new claims did not relate back to the claims raised in the Petition.

1924, 1928 (2013).) Accordingly, the Court treated Petitioner's first ground for relief as an

assertion by Petitioner that his <u>Brady</u> claim was entitled to a merits review under the actual

innocence exception to § 2244(d)(1)(D), recognized by the Supreme Court in <u>McQuiggin v.

Perkins</u>, 133 S.Ct. 1924, 1928 (2013). (Order Dismiss'g Pet. at 5.) Under that exception, a

credible showing of actual innocence may allow a petitioner to pursue his constitutional claims

on the merits notwithstanding expiration of the statute of limitations. <u>Id.</u> at 1931.

> In its original Order, this Court observed that,

> For the State to have suppressed evidence that the bullet that killed Baker had
> Petitioner's DNA on it, the State first would have had to run a DNA test on the
> biological material from that bullet. Petitioner, however, provides absolutely no
> evidence that the State ran such a test on either bullet recovered from Baker's body.
> The State cannot violate <u>Brady</u> by suppressing non-existent evidence.

(Order Dismiss'g Pet. 6.) Given this Court's finding that no factual predicate existed for the

<u>Brady</u> claim, the Court can only speculate about the Fourth Circuit's reason(s) for remanding for

consideration of whether the Petition is timely under § 2244(d)(1)(D).

> Nevertheless, the Court now finds that Petitioner is not entitled to statutory tolling under

§ 2244(d)(1)(D). Petitioner's <u>Brady</u> claim alleges knowledge on the part of the State that

Petitioner's DNA was on the bullet, and as the Court has already explained, for the State to have

such knowledge, it "would have had to run a DNA test on the biological material from that

bullet." Petitioner has failed to show that the State ran a DNA test, or any other test, to identify

whose blood was on the bullets removed from Baker's body. Because there is no factual basis

for the <u>Brady</u> claim, Petitioner could have raised it at any time.

> Notably, Petitioner does not claim the State failed to disclose that the Charlotte

Mecklenburg Police Department ("CMPD") collected physical evidence with blood on it. It

would be difficult for him to make such a claim as Baker's autopsy report states that medical

examiners collected both bullets and a sample of Baker's blood as evidence. (Autopsy Rpt., Pet. 27, Doc. No. 1.) Additionally, attached to Petitioner's pro se motion for preservation of evidence and post-conviction DNA testing, filed in Mecklenburg County Superior Court on December 5, 2013, was a CMPD Crime Scene Search Supplemental Report, dated July 2, 1999, which states that shoes, jeans, boxer shorts, and three t-shirts were collected at the crime scene. (Mot. for DNA Testing 10, Ex. A, Resp't's Ex. 4.) The reporting officer noted the presence of wet blood on all three t-shirts. Id. Exhibit B of the same motion was a CMPD Supplemental Report stating that, on July 28, 1999, a CMPD investigator retrieved the two bullets and blood sample from the medical examiner. (Mot. for DNA Testing 12, Ex. B, Resp't's Ex. 4.)

Thus, Petitioner has known since before his trial that the CMPD collected the bullets and physical evidence that had blood on it. North Carolina prisoners have been able to seek post-conviction DNA testing of biological evidence since October 1, 2001. See 2001 N.C. Sess. Law 2001-282, § 4 (effective Oct. 1, 2001) (codified at N.C. Gen. Stat. § 15A-269). Consequently, Petitioner could have requested DNA testing of any of the biological evidence in the State's possession at any time after judgment was entered in his case, but he did not do so until 2013.

In sum, Petitioner has not produced any evidence, newly discovered or otherwise, that his DNA is, or was, on any physical evidence collected from the crime scene or the victim. Therefore, there is no factual basis for Petitioner's assertion that "newly discovered evidence" demonstrates he is actually innocent of Baker's murder. Nor is there a factual basis for Petitioner's related Brady and ineffective assistance of counsel claims. Moreover, to the extent his DNA is, or was, on any physical evidence collected from the crime scene or the victim, due diligence required that Petitioner try to obtain that evidence prior to December 5, 2013 (Resp't's Ex. 4, Doc. No. 8-5). Accordingly, his habeas Petition is not timely under § 2244(d)(1)(D), and

10

for the reasons stated in the Court's original Order, Petitioner may not rely upon the "miscarriage of justice" exception to § 2244(d)(1)(D) to get around the statute of limitations. (Order Dismiss'g Pet. 5-7).

### C. 28 U.S.C. § 2244(d)(1)(C)

This Court also has been directed to consider Petitioner's claim that his habeas Petition is timely pursuant to § 2244(d)(1)(C). Under 28 U.S.C. § 2244(d)(1)(C), the federal statute of limitations begins to run on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." The constitutional rights asserted in the habeas Petition are the right to the effective assistance of trial counsel and the right to due process.

Petitioner contends that the statute of limitations began to run pursuant to § 2244(d)(1)(C) when the United States Supreme Court issued its opinion in Martinez v. Ryan, 566 U.S. 1 (2012). (Pet'r's Resp. to Summ. J. Mot. 20, Doc. No. 10.) In Martinez, the Supreme Court held that, in limited circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default [of claims] of ineffective assistance at trial." Id. at 132 S.Ct. at 9.

Neither of Petitioner's ineffective assistance of counsel claims is procedurally defaulted, and Martinez does not apply to claims alleging due process violations. Therefore, the Supreme Court's holding in Martinez has no bearing on the claims raised in Petitioner's § 2254 habeas Petition.

Furthermore, Martinez, did not recognize a new constitutional right or make the new right retroactive in actions for collateral review. See Clark v. Davis, 850 F.3d 770, 784 (5th Cir.

11

2017) ("Neither <u>Martinez</u> nor <u>Trevino</u> announced a new rule of constitutional law, and neither

has been made retroactive to cases on collateral review.")  It, therefore, cannot serve to toll the

statute of limitations under § 2244(d)(1)(C).  <u>See</u> <u>Lambrix v. Sec'y, Florida Dep't of Corr.</u>, 756

F.3d 1246, 1249 (11th Cir. 2014) ("[T]he equitable rule in <u>Martinez</u> 'applies only to the issue of

cause to excuse the procedural default of an ineffective assistance of trial counsel claim that

occurred in a state collateral proceeding' and 'has no application to the operation or tolling of the

§ 2244(d) statute of limitations' for filing a § 2254 petition." (citations omitted)).

## IV.    CONCLUSION

The § 2254 Petition is not timely under either 28 U.S.C. § 2244(d)(1)(C) or (D).  The statute

of limitations began to run on or about January 6, 2004, when Petitioner's conviction became final.

<u>See</u> § 2244(d)(1)(A).  It ran for 365 days until it fully expired on or about January 6, 2005,

almost 11 years before Petitioner filed his federal habeas petition.

**IT IS, THEREFORE, ORDERED** that:

1)  Petitioner's Petition for Writ of Habeas Corpus (Doc. No 1) is **DISMISSED** as

untimely;

2)  Respondent's Motion for Summary Judgment (Doc. No. 7) is **GRANTED**; and

3)  Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines

to issue a certificate of appealability as Petitioner has not made a substantial showing of a

denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S.

322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when

relief is denied on procedural grounds, a petitioner must establish both that the

correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: May 9, 2017

Frank D. Whitney
Chief United States District Judge