UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16cv003-FDW

| MONTAVIUS ANTOINE JOHNSON, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | **ORDER** |
| DAVID MITCHELL, | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the Court upon Petitioner's pro se "Motion for New Trial, Amendment of Judgment," which shall be considered under Rule 59(e) of the Federal Rules of Civil Procedure.[1] (Doc. No. 22).

## I.  RELEVANT BACKGROUND

Petitioner is a prisoner of the State of North Carolina who is serving a life-sentence for first-degree murder. The State's evidence at his trial tended to show that:

> On 2 July 1999 at approximately 2:30 a.m., Kimberly Pegues met her boyfriend Antonio Baker at a friend's apartment. When Pegues arrived, she noticed that Baker had a 10-millimeter Glock handgun in his pocket. Shortly thereafter, the couple left the apartment and Baker put the gun in his car. The couple then drove their separate cars to a fast food restaurant where Pegues got out of her vehicle to use the phone; Baker remained in his car. Upon returning to her car and backing out of the parking space, Pegues saw Defendant and another person approach Baker's car (later identified as C.J. Toney). Pegues heard someone yell "Give me your shit" and then "I don't have anything, man." Pegues saw defendant rummaging through Baker's car, and observed him throw belongings from Baker's glove box and back seat into the street. Pegues heard a shot and saw Defendant run back to his vehicle. Shortly thereafter, defendant returned to Baker's car and Pegues heard another shot. Baker died from a gunshot wound to the head.
>
> A police investigation uncovered a 10-millimeter shell in Defendant's yard, with

---

[1] Petitioner's Motion is considered under Federal Rule of Civil Procedure 59(e) because it was filed within 28 days of entry of judgment. Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

1

markings consistent with having been fired from a 10-millimeter Glock.

At trial, Defendant's counsel made the following statements during his opening statement:

C. J. Toney is the individual who shot both shots that night. That is our contention. And, he is the individual who shot and killed Baker.

Now, what happens in between there is a question of whether Mr. Johnson was trying to prevent that or not. Now remember, whatever Ms. Pegues tells you, we're asking you to pay close attention to it and look at; because, the positioning of the people is very important; where they were; and, what they may or may not have been doing.

Because, there may have been other reasons why Mr. Johnson was in between Mr. Toney and Mr. Baker. And, we will ask you to consider those reasons, at the appropriate time.

So, listen carefully to this eyewitness testimony and weigh what could have been seen and what could not be seen.

State v. Johnson, 588 S.E.2d 488, 489-90 (N.C. Ct. App. 2003).

After pursuing remedies in the state courts, Petitioner filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on December 29, 2015. (Doc. No. 1.) The Court subsequently granted the State's Motion for Summary Judgment and dismissed the habeas Petition as untimely under 28 U.S.C. § 2244(d)(1)(A). (Doc. No. 11.) The Court also concluded that Petitioner could not rely upon the actual innocence exception to 28 U.S.C. § 2244(d)(1)(D), see McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013), to get around the statute of limitations. (Doc. No. 11.)

On appeal, the Fourth Circuit Court of Appeals concluded that this Court had "failed to consider [Petitioner's] claims that his petition was timely pursuant to 28 U.S.C. § 2244(d)(1)(C), (D) (2012)." (Doc. No. 16.) It dismissed the appeal and remanded to this Court for consideration of those "claims."

On remand, the Court held that neither § 2244(d)(1)(C) nor (D) was applicable, granted

Summary Judgment to the State, and again dismissed the Petition as untimely. (Doc. No. 20.) Petitioner has now filed the instant Motion seeking reconsideration of the Court's judgment that the Petition is untimely.

## II. STANDARD OF REVIEW

A district court "has the discretion to grant a Rule 59(e) motion only in very narrow circumstances: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent manifest injustice.'" Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002) (quoting Collison v. Int'l Chem. Workers Union, 34 F.3d 233, 236 (4th Cir. 1994)). "Rule 59(e) motions may not be used to make arguments that could have been made before the judgment was entered." Hill, 277 F.3d at 708.

## III. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a statute of limitations for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The petition must be filed within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

As this Court has explained twice before, Petitioner's judgment of conviction became final on or about January 6, 2004. (Order 4, Doc. No. 11; Order 6, Doc. No. 20.) The statute of limitations then ran, uninterrupted, for 365 days until it expired on or about January 6, 2005. Petitioner did not file his federal habeas Petition until December 29, 2015. It is, therefore, undisputed that the habeas Petition is untimely under § 2244(d)(1)(A).

The only way Petitioner may obtain review of the claims raised in his habeas Petition is to demonstrate that the Petition is timely under § 2244(d)(1)(B), (C), or (D), that equitable tolling applies, or that he has made a credible showing of "actual innocence" to justify setting aside the statute of limitations, see McQuiggin, 133 S. Ct. at 1928. As the Court noted in its original Order dismissing the Petition as untimely, Petitioner put forward no argument or assertion of entitlement to equitable tolling of the statute of limitations. (Order 9 n.4, Doc. No. 11.) The Fourth Circuit determined that Petitioner had argued his Petition was timely under § 2244(d)(1)(C) and (D); it made no such determination with respect to § 2244(d)(1)(B). (Doc. No. 16.) Had Petitioner argued that his Petition was timely under § 2244(d)(1)(B), the Fourth Circuit undoubtedly would have included that in its remand.

In the instant Rule 59 Motion, Petitioner does not challenge this Court's holding that § 2244(d)(1)(C) does not apply. Nor does he challenge the Court's reasons for concluding that § 2244(d)(1)(D) does not apply. Instead, he argues that § 2244(d)(1)(D) applies on grounds the Court did not address in either of its previous Orders.

Petitioner has maintained throughout his pleadings that he did not kill Baker but was standing between Baker and C.J. Toney when Toney shot Baker in the back. According to Petitioner, the bullet traveled through his left shoulder and entered Baker's back left shoulder. Petitioner has alleged in each of his pleadings that the State suppressed evidence that Petitioner

4

did not kill the victim. The evidence the State is alleged to have suppressed has expanded with each of Petitioner's pleadings. In the habeas Petition, Petitioner claimed the State failed to disclose that his DNA was on the bullet that killed Baker. (Pet. 18, Doc. No. 1.) In his Response to the State's Motion for Summary Judgment, he further alleged that the State failed to disclose that his DNA was on Baker's clothing. (Pet'r's Resp. to Summ. J. Mot. 13-14, Doc. No. 10.) The Court dealt with each of those contentions in one or both Orders granting Summary Judgment to the State.

The instant Rule 59 Motion is largely taken up by a claim that the State suppressed Petitioner's own hospital records by failing to present them to the jury and by preventing his defense from also presenting the evidence to the jury. Petitioner raised this claim for the first time in his Response to the Motion for Summary Judgment. The Court did not address the claim in either of its prior Orders because: 1) Petitioner did not file a motion to amend his Petition to add a new claim; 2) the Petition itself was untimely; and 3) the new claim did not relate back to the claims raised in the Petition. The Court will address the claim here in the hope of clearing up Petitioner's misunderstanding of what is required of the State with respect to disclosure of evidence.

The Supreme Court held in <u>Brady v. Maryland</u>, that a due process violation occurs when the prosecution fails to disclose evidence to the defense that is favorable to the accused and is material either to guilt or to punishment, regardless of whether the prosecution acted in good faith. 373 U.S. 83, 87 (1963). Petitioner claims that the State violated <u>Brady</u> by filing a motion in limine to preclude defense inquiry into, or evidence of, another's guilt during the State's case-in-chief. (Pet'r's Resp. to Summ. J. Mot. 2-3 ¶ 1, 7-8 ¶ 6.) The evidence of another's guilt the State allegedly "suppressed" was Petitioner's hospital records documenting his treatment, five

5

days after the murder, for a gunshot wound to the left shoulder. (Pet'r's Resp. to Summ. J. Mot. 2-3 ¶ 1, 7-8 ¶ 6.)

This is not a Brady claim. Brady requires the government to disclose material, exculpatory evidence to the defense; it does not require the government to present that evidence to a jury. Thus, the State did not "suppress" Petitioner's records;[2] the State asked the trial court to prohibit defense counsel from referring to or introducing the records or other evidence while the State was presenting its case to the jury. If there was a viable cause of action under the Constitution stemming from the State's motion in limine, it arose when the trial court granted the motion, and Petitioner could have challenged the court's ruling on direct appeal.

For the purpose of determining whether statutory tolling under § 2244(d)(1)(D) applies, the Court is required to determine when Petitioner, through the exercise of due diligence could have discovered the factual predicate for his claim. As demonstrated, the factual predicate for any claim related to the State's motion in limine arose when the motion was granted and/or when appellate counsel failed to challenge the trial court's ruling on direct appeal. Consequently, Petitioner's "claim," is as untimely under § 2244(d)(1)(D), as it is under § 2244(d)(1)(A).

Additionally, the existence of the hospital records requires no change to the Court's conclusion that Petitioner does not qualify for the "actual innocence" exception to the statute of limitations. Under that exception, a credible showing of actual innocence may allow a petitioner to pursue his constitutional claims on the merits notwithstanding expiration of the statute of limitations. McQuiggin, 133 S. Ct. at 1931. The miscarriage of justice exception applies only to cases "in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" Id. at 1933 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)) (internal quotation

---

[2] Petitioner could have obtained a copy of his hospital records at any time by filing a medical release form.

marks omitted). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

Petitioner's medical records demonstrate only that five days after the murder, Petitioner was treated for a gunshot wound to the left shoulder. Contrary to Petitioner's assertions, the records do not demonstrate that the wound was five days old. Nor do the records demonstrate that Petitioner's wound was made by the same caliber of bullets recovered from the victim's body or that he and the victim were shot with the same gun. Most importantly, Baker died from a gunshot wound to the head, not the shoulder. Thus, even if evidence had been presented that five days after the murder, Petitioner was treated for a gunshot wound to the left shoulder, he has not demonstrated that "it is more likely than not that no reasonable juror would have" concluded that he did not shoot Baker in the head.

## IV. CONCLUSION

Petitioner has failed to show the existence of any of the circumstances under which a Rule 59(e) motion may be granted. See Hill, 277 F.3d at 708. Accordingly, his Motion shall be denied.

**IT IS, THEREFORE, ORDERED** that Petitioner's "Motion for New Trial, Amendment of Judgment" (Doc. No. 22) is **DENIED**.

Signed: June 12, 2017

Frank D. Whitney
Chief United States District Judge